IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE FOLKEN,                                        No. 3:15-cv-01796-HZ

       Plaintiff, Counterclaim Defendant,
       Cross-Claim Plaintiff, Cross-Claim
       Defendant,

    v.

VOYA INSURANCE & ANNUITY                    OPINION & ORDER
COMPANY,

       Defendant, Counterclaim Plaintiff,
       Third Party Plaintiff,

    v.

JIMMY LEE HAMILTON, as Power of
Attorney for Helen Katherine Hamilton;
and HELEN KATHERINE HAMILTON,

       Third-Party Defendants, Cross-Claim
       Plaintiffs, Cross-Claim Defendants,

/ / /

/ / /

1 - OPINION & ORDER

Andrew J. Myers
PEACHY & MYERS, P.C.
Attorney at Law
401 E. 3rd Street, Suite 105
The Dalles, Oregon 97058

     Attorney for Michelle Folken

Jimmy Lee Hamilton
Helen Katherine Hamilton
2709 Shady Hill Court
Grapevine, Texas 76051

     Appearing Pro Se

HERNANDEZ, District Judge:

     This is an interpleader action in which the insurer, having deposited life insurance policy

funds in the Court's registry, has been dismissed from the case and the remaining parties,

Michelle Folken and Jimmy and Helen Hamilton, assert cross-claims against each other seeking a

declaration that each is the rightful beneficiary of those funds.

     The policy was issued to Phillip Fugate, who died in 2015.  When he died, his wife

Doreen Fugate became the beneficiary of the policy.  Michelle Folken is Phillip's daughter and

Doreen's stepdaughter.  Helen Hamilton is Doreen's mother.  Jimmy Hamilton has a Uniform

Statutory Power of Attorney for Helen Hamilton.  Folken and the Hamiltons filed cross-motions

for summary judgment.  For the reasons explained below, I grant Folken's motion and deny the

Hamiltons' motion.

## BACKGROUND

     Phillip Fugate purchased an annuity from Voya in 2008.  Voya Ans., Ex. 1, ECF 1-3 at

10-18.  It paid him certain sums of money during his lifetime and provided that if he died before

2 - OPINION & ORDER

all sums had been paid, the unpaid portion would be paid by Voya to a beneficiary designated by Phillip. Phillip designated his wife Doreen as the beneficiary of the annuity. Id. Phillip died on January 10, 2015, before Voya had paid all sums. As beneficiary, Doreen then had the ability to request either a lump sum payment or a life expectancy deferral option. Compl., Ex. 1, ECF 1-3 at 20-24. She was also able to designate a new beneficiary. Id.

Shortly after Phillip's death, Doreen met with her accountant, Kenneth L. Onstott, to discuss her options regarding the annuity. Onstott Decl. ¶ 4, ECF 33. During that appointment, Doreen told Onstott that it was her wish to name Folken as the new beneficiary of the annuity. Id. Doreen and Onstott reviewed the forms necessary to make the beneficiary designation but did not execute the documents at that time. Id. ¶¶ 4, 7.

Shortly thereafter, Doreen suffered a heart attack and was admitted as a patient to Oregon Health & Sciences University (OHSU). Wallace Decl. ¶ 4, ECF 35. While there, Doreen completed the form to request the annuity's life expectancy deferral option. Compl., Ex. 1. In the section entitled "New Beneficiary Designation," Doreen named Michelle Folken as the new designated beneficiary. Id. She indicated that Folken was her daughter, not her stepdaughter. Id. And, under the "Beneficiary Type" column, she checked the box for "Contingent" instead of "Primary." Id.

After completing the form, Doreen asked her friend Etta Myers to take the form and deliver it to Onstott's office in The Dalles. Myers Decl. ¶ 3, ECF 36. Myers did so. Id. ¶ 4. However, Doreen died on March 26, 2015. Upon learning of Doreen's death, Myers returned to Onstott's office, picked up the beneficiary form, and delivered it to Doreen's residence where it could be addressed by Doreen's family. Id.

3 - OPINION & ORDER

Shortly after Doreen's funeral, Folken went to Doreen's home to begin cleaning and organizing things.  Folken Decl. ¶ 4, ECF 34.  At that time, she found a "to do" list created by Doreen.  Id. The list includes an item which reads:  "Make call to Voya, ask if I can roll remaining over into another annuity and draw stipen[d] thru lifetime and remaining balance goes to Michelle."  Folken Decl., Ex. 1.

Folken gave Voya the death certificates for Phillip and Doreen and the beneficiary designation form that Doreen completed before her death.  Voya initially denied any claim by Folken because Voya did not receive the beneficiary designation form while Doreen was still alive.  Voya also received a claim from Helen Hamilton, in a letter from Jimmy Hamilton, in which he represented that he had power of attorney for Helen and that Helen was the legal heir to Doreen's estate.  After Folken sued Voya in state court, Voya brought a counterclaim against Folken, asserted third-party claims against the Hamiltons, removed the action to this Court, and interpleaded the funds into this Court's registry.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Folken argues that under the form completed by Doreen before her death, Folken is Doreen's intended beneficiary of the annuity funds. The Hamiltons contend that Helen Hamilton is the true and correct beneficiary.

In a 2007 case, the Oregon Court of Appeals considered a claim by an insured's former wife who contended she was the designated beneficiary of a life insurance policy. Sackos v. Great-West Life Assur. Co., 213 Or. App. 298, 160 P.3d 1026 (2007). Although the decedent had named his former wife as the beneficiary when they were married, they had divorced and the decedent later submitted forms to the insurance company indicating that he wanted to change the

5 - OPINION & ORDER

beneficiary to a girlfriend. For some reason, the insurance company took no action. When the decedent died, his former wife claimed the life insurance benefits. Then, the insurance company discovered the change of beneficiary forms in its files. Both the former wife and the girlfriend claimed to be the rightful beneficiary.

The policy required that any beneficiary designation change be "recorded." The court determined that the decedent's having submitted the new beneficiary form to the insurer was not equivalent to that form being "recorded." Id. at 304-05, 160 P.3d at 1030-31. But, the court nonetheless rejected the former wife's argument that she was therefore entitled to relief as a matter of law. The court explained that "[i]n Oregon, it has long been the law that a change of beneficiaries of a life insurance policy is not necessarily defeated by a failure to conform to the requirements of the policy. The overriding question is whether the decedent intended to accomplish such a change." Id. at 305, 160 P.3d at 1031.

In its discussion, the Sackos court discussed two Oregon Supreme Court cases addressing the issue of a decedent's intent. In Northern Life Ins. Co. v. Burkholder, a life insurance policy provided that a change of beneficiaries did not take effect until endorsed by the company at its home office. 131 Or. 537, 283 P. 739 (1930). The decedent tried to change beneficiaries by writing the name of his fiancée in a blank space on a copy of the policy provision pertaining to beneficiaries. When the decedent died, his estate contested the addition of the fiancée's name as a beneficiary on the ground that the addition had never been endorsed by the insurer at its home office. The court held that, notwithstanding the failure to obtain the endorsement, the change in designation of the beneficiary was effective. The decedent's intentions were not in dispute. Id. at 552, 283 P. at 744. The court acknowledged that the decedent had not followed the "technical

method" prescribed by the policy.  Id.  But, this was not determinative.  Id.  Instead, the court

found a "clear and unmistakable designation, under the hand of the decedent, that he wished [the

fiancée] to receive the proceeds of his insurance policy[.]"  Id.  This evidence was "supplemented

by the testimony of [the fiancée]" as to the decedent's intention that he intended to make her the

beneficiary.  Id.

      The second case cited in Sackos, Edwards v. Wolf, 278 Or. 255, 563 P.2d 717 (1977),

involved a decedent who named his father as a beneficiary on a life insurance policy but who

then amended the policy by substituting his wife as beneficiary.  Although he sent the

amendment to the insurer, he retained a copy of the unamended policy naming his father.  The

decedent and his wife ultimately divorced, and the decedent remarried. The decedent showed his

second wife his copy of the unamended life insurance policy, which named his father as

beneficiary, and asked whether that designation met with her approval.  She agreed.  When the

decedent died, the first wife asserted that she was the only properly named beneficiary.

      Relying on Northern Life Insurance, the Edwards court concluded that any defects in the

process for changing the designation of beneficiary back to the decedent's father were not

controlling.  Id. at 260-261, 563 P.2d at 719-20.  Instead, "maximum effect should be given to

the insured's intention to change the beneficiary of his insurance policy."  Id.  The court held in

favor of the decedent's father because it was undisputed that the decedent wanted his father to

receive the proceeds of the policy.  Id. at 262, 563 P.2d at 720.

      Sackos, while following the law from Northern Life Insurance and Edwards,

distinguished those cases because in Sackos, unlike in the cited cases, there were issues of fact

regarding the decedent's intent.  213 Or. App. at 307, 160 P.3d at 1032.  As the Sackos court

7 - OPINION & ORDER

explained, the decedent had filed two different forms indicating that he intended to change the beneficiary from his former wife to his girlfriend.  Id.  The former wife, however, relied on the fact that the decedent told his sister, one of his sons, and his former wife herself, that he intended the former wife to remain the beneficiary.  Id.  Given the conflict in the evidence, a genuine issue of material fact existed as to the decedent's intentions which could not be resolved on summary judgment.  Id.

Folken argues that even though Voya did not receive Doreen's designation form before Doreen died, under Northern Life Insurance, Edwards, and Sackos, she is still the rightful beneficiary because the evidence in the record establishes as a matter of law that Doreen intended that Folken be the annuity's designated beneficiary.  Folken relies on Onstott's statement that Doreen told him she wanted Folken to be the beneficiary of the annuity.  She also cites to the form Doreen completed which Doreen signed and had notarized, naming Folken as a beneficiary.  Additionally, she cites to the "to do" list which Folken states is in Doreen's handwriting, and which was found in Doreen's home, expressly stating that Doreen intended to ask Voya to have the "remaining balance go[] to Michelle."

Folken contends that the fact that Doreen indicated she was her daughter rather than her stepdaughter is not of any legal significance.  She also cites to evidence supporting the conclusion that Doreen and Folken were close and that Doreen considered Folken to be her daughter.  Folken Decl. ¶ 3 (Folken was ten years old when her father married Doreen; she was extremely close to her father and Doreen; Doreen considered Folken to be her daughter and frequently introduced her as such); Onstott Decl. ¶ 3 (did not know until this action was filed that Folken was Doreen's stepdaughter as opposed to her daughter; had provided services to Phillip

8 - OPINION & ORDER

and Doreen for at least five years and Doreen had always referred to Folken as her daughter);

Wallace Decl. ¶ 3 (close friend of Phillip's and Doreen's states she knew Folken was Doreen's

stepdaughter but describes Doreen's and Folken's relationship as "extremely close"; Doreen had

no children of her own and considered Folken to be her daughter and Folken's son Caiden to be

her grandson; Doreen loved Folken and Caiden very much).

Finally, Folken argues that the fact that Doreen checked the box for Folken to be a

contingent beneficiary as opposed to a primary beneficiary is also legally insignificant.  Folken

notes that Doreen selected no other beneficiary, contingent or primary.  Compl., Ex. 1.  Folken is

the only beneficiary.  She argues that as a result, she takes even as a contingent beneficiary.

Additionally, she states that it is apparent that designating Folken as the contingent beneficiary

without selecting a primary beneficiary, was an oversight.  If Doreen intended for her estate to be

the primary beneficiary as the Hamiltons contend, selecting Folken would serve no purpose as

there would be no scenario under which Folken could ever take as a beneficiary.

The Hamiltons fail to create any material issues of fact in opposing Folken's motion and

fail to establish their right to relief as a matter of law in support of their own motion.  First, they

address the Declaration of Etta Myers.  Myers is the wife of the pastor of the church in Wamic

that Doreen and Phillip attended.  Myers Decl. ¶ 1.  She met Folken when Folken was four or

five years old and when Phillip was still married to his first wife.  Id. ¶ 2.  She met Doreen later,

after Doreen and Phillip were married.  Id.  When Doreen and Phillip were first married, they

moved to California.  Id.  They moved back about five years ago and it was not until then that

Myers got to know Doreen well.  Id.  When Doreen was hospitalized at OHSU in March 2015,

Myers and her pastor husband visited Doreen there three times.  Id. ¶ 3.  At one of those visits,

9 - OPINION & ORDER

Doreen asked Myers to deliver the beneficiary designation form she had now completed, to Onstott in The Dalles.  Id.  Myers did so.  Id. ¶ 4.

The Hamiltons state that although Myers knew Doreen well for five years, Myers does not state that she ever heard Doreen express an intention to give Folken the annuity proceeds. But, this does not create an issue of fact.  There is no indication in Myers's Declaration that Doreen and Myers discussed the proceeds of the policy as opposed to the delivery of the beneficiary form, or that Doreen made a contrary statement of intent to Myers.  An absence of evidence from Myers that Doreen expressly told her she wanted Folken to be the beneficiary does not raise a dispute as to any of Myers's statements or negate any inferences from those statements.

Next, the Hamiltons discuss Onstott's Declaration.  They state that just because Onstott states that Doreen referred to Folken as her daughter, "while kind, does not make Michelle a daughter or an heir."  Defs.' Resp. 2, ECF 41.  Although the Hamiltons are correct, meaning that Doreen's reference to Folken as her daughter does not make her a daughter or an heir, the point is irrelevant.  The question is whether Doreen intended to make Folken the beneficiary of the annuity.  Folken could be anybody - a friend, a co-worker, or any other non-relative, and still be a designated beneficiary.  Thus, it does not matter that Folken is not a daughter or an heir.  And, the Hamiltons' statement does not contradict Onstott's representation that while meeting with him, Doreen referred to Folken as her daughter.  The Hamiltons also argue that because Onstott was in contact with Doreen only once a year, his knowledge of Phillip and Doreen or of Folken is very limited.  But, this also does not detract from Onstott's statements that while meeting with Phillip and Doreen annually for at least five years, Doreen referred to Folken as her daughter.

10 - OPINION & ORDER

Next, the Hamiltons point out that even though Wallace knew Doreen for thirty years, Wallace never states that Doreen told Wallace she wanted Folken to receive the annuity or any other property of her estate.  Instead, they talked about what Doreen wanted to do with Phillip's possessions.  Wallace Decl. ¶ 5.  However, the fact that Wallace does not affirmatively state that she and Doreen spoke about what would happen if Doreen died is not sufficient to create an issue of fact regarding Wallace's statements.  It also does not suggest that Doreen did not intend Folken to be the designated beneficiary.  Wallace states that when she was talking to Doreen, Doreen "never spoke about things as though she was going to pass away."  Id.  And, "[b]ased upon the nature of our conversation," Wallace believed that "Doreen was fully expecting to recover."  Id. With that, the only reasonable inference is that Doreen spoke to Wallace about what to do with Phillip's things and there was no need for her to discuss what to do with her own things.  None of the evidence cited by the Hamiltons conflicts with Wallace's statements in her Declaration or allows for a contrary inference.

As to Folken's Declaration, the Hamiltons state that contrary to what Folken represents, Folken's relationship with Phillip and Doreen was not close.  Initially, the Hamiltons provided no declaration or affidavit or any other evidence in support of this assertion.  In an untimely submission[1], the Hamiltons offer the Declaration of Sue and Erin Schable who were neighbors of Doreen's and who state that there was a lot of tension between Doreen and Folken and that they did not hear Doreen refer to Folken as her daughter.  Schable Decl. 3.  But, whether the

---

[1]  The motions were fully briefed as of July 11, 2016.  The Hamiltons did not seek leave of Court for the submission of the Schable Declaration which was filed on August 15, 2016, ECF 44.  While the Schable Declaration could be stricken for that reason alone, I do not do so because I reach the same conclusion even considering the statements in the Declaration.  For that reason, I deny Folken's motion to strike the Schable Declaration as moot.

relationship between Doreen and Folken was close or distant is not determinative of Doreen's intent to name Folken as the beneficiary.  There is no requirement that a beneficiary be a well-liked family member.  Doreen could have named her garage mechanic, her neighbor, or a waitress at the neighborhood café as a beneficiary.  While the Schable Declaration creates an issue of fact regarding the nature of the relationship between Doreen and Folken, it is not material.

Next, the Hamiltons note that the "to do" list is not dated or signed and there is no proof that Doreen wrote it.  They imply that Folken must have forged the note:  "The 'note' has been in the sole possession of Michelle Folken who stands to profit handsomely from it.  Michelle Folken's intent is very clear.  Enough said."  Defs.' Resp. 3.  The Schables make similar assertions by stating that they searched through Doreen's home after her death and before Folken arrived but found neither the "to do" list nor the beneficiary designation form.  Schable Decl. 3-4. They also state that the "to do" list is "definitely not Doreen Fugate's handwriting."  Id. at 4.

Folken states in her Declaration that she recognized the "to do" list as being in Doreen's handwriting.  Folken Decl. ¶ 4.  She has seen numerous examples of Doreen's handwriting over the years, both around Phillip's and Doreen's house when Folken visited, and in cards and letters Doreen sent to her.  Id.  Doreen's handwriting is very familiar to Folken.  Id.  In contrast, the Schables, while stating that they were close friends and confidants of both Doreen's and Helen's, offer no basis for being familiar with Doreen's handwriting.  Schable Decl. 2.  Because their statement is conclusory and without any factual support, it is entitled to no weight.  Additionally, as explained further below, even if I do not consider the "to do" list at all, the evidence still supports a conclusion that Doreen intended Folken to be her designated beneficiary.

12 - OPINION & ORDER

The Schables' Declaration contains further statements that are not material. They state that they had intimate discussions with Doreen about her situation but that Doreen never gave any intention that she wanted Folken to receive the annuity benefit. Id. 2, 3. For the reasons explained as to similar statements by others, the lack of an express statement by Doreen to the Schables regarding making Folken the beneficiary does not negate an intent established by other evidence. Moreover, the Schables, despite their "intimate discussions," never state that Doreen expressed her intent to designate Helen as the beneficiary.

The Schables also state that Doreen's focus was on keeping the money for herself so that she could survive the loss of Phillip's pension.[2] Schable Decl. 3. The suggestion is that this is somehow inconsistent with designating Folken as a beneficiary. But, a beneficiary does not receive the proceeds of the policy unless the policyholder is dead. There is nothing inconsistent about the desire to receive monthly income from the policy and designating a beneficiary in the event one dies before the policy limits are reached. Doreen's election to receive the life expectancy deferral option is completely consistent with the intent as reported by the Schables. Nothing about that election is inconsistent with naming a beneficiary.

In opposing Folken's motion and in support of their own, the Hamiltons make no persuasive legal argument. They suggest that because the Burkholder case is from 1977, it is no longer good law. According to the Hamiltons, because the insurance world of today is fraud-filled, it would not be recognized by the insurance world "of then." Actually, Burkholder, or

---

[2] And, the Hamiltons' observation that Doreen did not express her intention regarding leaving Folken the annuity proceeds should Doreen die, to Myers, Wallace, or the Schables is completely consistent with her desire to receive the money during her lifetime. She did not expect to die but instead expected to live and receive the income stream. The only person it made sense to discuss the beneficiary issue with was Onstott.

13 - OPINION & ORDER

Northern Life Insurance as I refer to it, is from 1930, not 1977. But, regardless of the date, it remains good law. Even if the insurance world is different as the Hamiltons suggest, the law remains consistent: the fact that Doreen did not live long enough to actually submit the beneficiary form designating Folken as the beneficiary of the annuity is not determinative. What is controlling is Doreen's intent.

The Hamiltons also argue that by listing Folken as the contingent beneficiary, Doreen was expressing her intent that her mother Helen be the primary beneficiary. That is, the omission of a primary beneficiary and listing Folken as the contingent beneficiary can be viewed as evidence of an intent that someone other than Folken be the primary beneficiary. According to the Hamiltons, that "someone other" is Doreen's estate of which Helen Hamilton is the heir by virtue of Oregon law. See Defs.' Mtn, Ex. 3, ECF 26-3 ("Small Estate Affidavit Intestate Estate" completed by Helen Hamilton for the Estate of Doreen Fugate). What the Hamiltons' argument overlooks is that while the omission of a primary beneficiary and the listing of Folken as the contingent beneficiary could indicate that Doreen may have intended "someone else" besides Folken to be the primary beneficiary of the annuity, that does not suggest that the "someone else" was Helen or Doreen's estate. There is no evidence in the record expressing Doreen's intent that Helen be the beneficiary.

Furthermore, the evidence establishes that checking the contingent beneficiary box was error. It is the only reasonable conclusion from the facts. First, it makes no sense that if Doreen had intended a primary beneficiary, she would have left the "primary beneficiary" box unchecked. The fact that she completed the form suggests that she was quite capable of naming beneficiaries and she certainly would have put Helen's name or her own estate as the primary

14 - OPINION & ORDER

beneficiary if that was her intent.  Second, if she intended her estate to be the primary beneficiary, there would have been no incentive to complete a beneficiary designation form in the first place.  Under Oregon law, the annuity would have passed to her estate without any further action on her part.  If Doreen had intended her estate to be the primary beneficiary, it makes no sense to have selected Folken as a contingent beneficiary because Doreen's estate would be the sole beneficiary of all of her assets.  There would be no reason to have a contingent beneficiary at all.

Finally, even omitting the "to do" list and assuming for the purposes of these motions that Doreen and Folken were not close, the statement by Onstott, a neutral third party, that Doreen told him she wanted Folken to be the new beneficiary, remains uncontradicted.  The beneficiary designation form completed by Doreen is completely consistent with the intention Doreen expressed to Onstott.  Her request to Myers that the completed form be delivered to Onstott is confirmation that Doreen desired the form naming Folken to be tendered to Voya.  Here, unlike in Sackos, there are no material conflicts in the evidence.  The evidence establishes as a matter of law that Doreen intended Folken to be the beneficiary of the annuity.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15 - OPINION & ORDER

CONCLUSION

Folken's motion for summary judgment [31] is granted.  The Hamiltons' motion for summary judgment [37] is denied.  Folken's motion to strike the Schable Declaration [45] is denied as moot.  Folken is directed to prepare an appropriate judgment and submit it to the Court, after conferring with the Hamiltons, within fourteen days of the date of this Opinion & Order.

IT IS SO ORDERED.

Dated this ___23___ day of ___August___, 2016

_____
Marco A. Hernandez
United States District Judge

16 - OPINION & ORDER